IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-95-FL

| | |
|---|---|
| CHRISTOPHER SABB, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-26 & 28). Plaintiff responded to Defendant's motion (DE-30), and the time for filing any further responses or replies has expired. Therefore, these motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), these motions have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-26) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-28) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Supplemental Security Income ("SSI") on June 6, 2008, alleging that he became unable to work on January 1, 2002. (Tr. 10). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"),

1

who determined that Plaintiff was not disabled in a decision dated March 18, 2011. *Id.* at 10-20. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on January 5, 2012, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on February 28, 2012. (DE-6).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 6, 2008. (Tr. 12). At step two, the ALJ found that Plaintiff had the following severe impairments: 1) bipolar disorder; 2) diabetes mellitus; 3) high blood pressure; 4) obesity; and 5) borderline intellectual functioning. *Id.* at 491. However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium work. *Id.* at 14. Specifically, the ALJ found that Plaintiff:

3

> has the residual functional capacity to perform medium work, lifting and carrying 50 pounds occasionally and 25 pounds frequently. He is capable of standing, sitting, and walking for 6-hours in an 8-hour workday. The claimant is unable to climb ropes or scaffolds, and he should avoid concentrated exposure to dangerous machinery and heights. Further, the claimant is capable of performing simple, routine, repetitive tasks for 2-hour intervals in an 8-hour workday. He is able to accept supervision, have occasional contact with the public and occasionally interact with coworkers . . .
>
> *Id.*

The ALJ then determined that Plaintiff was unable to perform any of his past relevant work. *Id.* at 18. However, based on the testimony of a vocational expert ("VE"), the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id*. at 19-20. Accordingly, the ALJ determined that Plaintiff was not under a disability from June 6, 2008 through March 18, 2011. *Id.* at 20.

The ALJ's findings were accompanied by a thorough review and assessment of the entire record. This "assessment . . . provides a backdrop for the ALJ's evaluation[s] . . . and provides insight into [them]." Worden v. Astrue, 2012 WL 2919923, *5 (E.D.N.C. May 29, 2012), *Report and Recommendation Adopted by*, Worden v. Astrue, 2012 WL 2920289 (E.D.N.C. July 17, 2012). Moreover, the undersigned has reviewed the entire record and finds that the ALJ's determinations were supported by substantial evidence.

This Court must uphold Defendant's final decision if it is supported by substantial evidence. Plaintiff's assignments of error largely rely on the contention that the ALJ "failed" to consider portions of the record. However, as noted above, the ALJ thoroughly discussed and summarized the entire record. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh

4

conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit. The undersigned shall nonetheless address Plaintiff's individual assignments of error.

**The ALJ properly assessed Plaintiff's RFC**

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's RFC. (DE-27, pg. 8). First, Plaintiff asserts that the ALJ "completely ignored" Plaintiff's psychotherapy treatment. *Id.* In addition, Plaintiff contends "the ALJ failed to consider the effects of [Plaintiff's] persistent sleepiness due to his medication on his ability to work." *Id.* These arguments shall now be discussed in turn.

The psychotherapy treatment records noted by Plaintiff tend to support the ALJ's findings. These records consistently noted that Plaintiff had normal: 1) flow of thought; 2) content of thought; and 3) mood and affect. (Tr. 650, 654, 658). His interview behavior was cooperative. *Id.* at 649, 653, 657. Plaintiff was not psychotic on October 27, 2010. *Id.* at 657. On January 5, 2011, it was observed that Plaintiff's mood was good and that he was not manic or psychotic. *Id.* at 649. Moreover, these records do not specify the frequency and duration of Plaintiff's treatment sessions. *Id.* at 649-658. There is no evidence that Plaintiff's psychotherapy treatment visits limited his availability or ability to work. Finally, Plaintiff's argument that the ALJ "completely ignored" these records is not correct. *Id.* at 16–17.

In addition, Plaintiff argues that "the ALJ failed to consider the effects of [Plaintiff's] persistent sleepiness due to his medication on his ability to work." (DE-27, pg. 8). However, this assertion also not correct. Specifically, the ALJ explicitly discussed Plaintiff's drowsiness in his explanation of Plaintiff's RFC. *Id.* at 15-17. Furthermore, the ALJ's RFC determination

5

included appropriate limitations to account for Plaintiff's drowsiness. The ALJ found that Plaintiff was capable of performing simple, routine, repetitive tasks for 2-hour intervals in an 8-hour workday. *Id*. at 14. This finding was supported by substantial evidence. For example, on August 24, 2009, Plaintiff stated that his medications helped "his anger behavior and sleeping behavior." *Id.* at 538. Ultimately, despite Plaintiff's sleep disorder, Dr. Tin Le opined that Plaintiff did not have an impairment that affected his ability to perform normal daily tasks. *Id.* at 540. Likewise, Dr. James Frazier noted Plaintiff's "difficulties [with] sleeping" on July 19, 2008. *Id.* at 367. These, difficulties notwithstanding, Dr. Frazier opined that Plaintiff "could handle employment." *Id.* Dr. Frazier also found that Plaintiff could carry out routine simple instructions and perform repetitive tasks. *Id.* Again, on August 13, 2009, Dr. Gary Bachara stated that Plaintiff's "sleeping [was] okay as long as he is on medications." *Id.* at 532. After examining Plaintiff, Dr. Bachara opined that Plaintiff was able "to understand, retain, and follow instructions [and] perform simple repetitive tasks." *Id.* at 534. Finally, on November 14, 2009, Dr. Venkata Chittilla indicated that:

> Patient reported that he is doing good. Reported that he is taking the Depakote. Patient was supposed to be taking Depakote and Geodon; however, patient stated that he did not need to take Geodon because it was making him sleepy and stopped taking the Geodon. However, patient reported he is doing good. Denied any problems.
>
> *Id.* at 609.

For these reasons, this assignment of error is without merit.

**<u>The ALJ properly assessed Plaintiff's credibility</u>**

During the hearing in this matter, Plaintiff testified that he was having difficulty staying awake because of his medications. *Id.* at 28, 44. He stated that he attended group therapy every day from 8:00 a.m. until 3:00 p.m. *Id.* at 36-37. When asked to describe his other daily

6

activities, Plaintiff simply replied "[n]othing . . . I go to [group therapy]." *Id.* at 36. The ALJ ultimately determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." *Id.* at 17. Plaintiff contends that the ALJ incorrectly assessed his credibility, and, as a result, erred in finding that Plaintiff only has moderate difficulties in social functioning.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R.

7

404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id.* at * 2.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment.

For example, on July 19, 2008, Plaintiff was pleasant, cooperative and low key. *Id.* at 366-367. As noted above, Dr. Frazier opined that "[i]ntellectually [Plaintiff] could handle employment." *Id.* at 367. Plaintiff's mood was stable on February 16, 2009. *Id.* at 392. Dr. Bachara opined on August 26, 2009, that Plaintiff did not have bipolar disorder. *Id.* at 534. He also indicated that Plaintiff would be able to perform simple repetitive tasks and get along with others. *Id.* Likewise, on January 5, 2011 Plaintiff's mood was good. *Id.* at 649. He was described as "doing good" and "getting along with staff and peers." *Id.* Drs. Cyr-McMillon and Sharon Skoll described Plaintiff's difficulties in social functioning as "moderate." *Id.* at 18, 420, 551. In addition, Dr. Cyr-McMillon noted that "[s]ocially [Plaintiff] is friendly [and] [g]ets along with his friends." *Id.* at 422.

For these reasons, this assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-26) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-28) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, December 07, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE